It looks like we have a nice crowd. The court would like to thank Dean Lidsky and the University of Missouri Law School for inviting us. It's a great pleasure and honor for us to be here. That being said, Ms. Dolan, would you announce our cases for argument this morning? The following cases are scheduled for argument this morning, Tuesday, April 10, 2018. Case No. 17-2857, Western Missouri, Shondel Church v. State of Missouri et al. Case No. 17-2624, Eastern Missouri, Mark Wellman v. St. Louis County, Missouri et al. Case No. 17-3045, Western Missouri, United States v. Thomas Howard. The first case for argument this morning is Shondel Church v. State of Missouri. Thank you, Your Honors. May it please the Court, John Sauer, appearing on behalf of the State of Missouri and the other witnesses. I want to start my argument by pointing out that I think there's an extraordinary feature of the complaint competition against Richard Morales in this case, and that is being paragraphed. Therefore, in this case, it fails to identify any specific content by any member of the State or any of its agencies that would allegedly remedy or address the constitutional injuries that are laid out in the report. Mr. Sauer, does it mention the Supreme Court at any time? The complaint, does it mention the Supreme Court at any time? Not to my recognition. Does it mention the Missouri Bar at any time? It does not. Okay, proceed. In that particular brief, they say, basically, what they have done, and I think it's been very clear in their briefing file this morning, is that they are trying to tiptoe around the massive sovereignty problems that happen in the case by hiding the laws to what we believe they really want in the petition and postponing a decision on sovereignty until after the entire case has been reviewed. That paragraph, therefore, he says, asks the Court to enter an injunction that requires the defendants to propose and implement a plan that would allegedly address the constitutional injuries that are complained of. And I think when you read their response, I think it comes clear that there's really only two classes of conduct that they've asked the Court to enter to address these injunctions. One would be from the state, and one would be as a part of the federal system, and to respond to them. That would have huge sovereignty problems under Alabama's jurisdiction, under counsel for compliance with the case on their side. Or, the alternative, in order for the district court to direct it, to classify the authorities in the Missouri not to raise the cases. But, of course, that would have huge problems under the other, against Harris and the Federalist Defense Clause. They're not seeing it there. So, what they've done is they've declined to identify anything specific that could be done to address the injury. And they said, hey, the state defendants have to tell us what's going to address the problem. So, in other words, what they've done is they've treated the sovereignty problem that happened in this case, and in exchange for that, they've walked into Article III. They haven't addressed the building problems. They've embarrassed them. Part of Article III is that we have to avenge sovereignty. I don't think you've raised standing opium. We've raised the problem of opium. We have a big, indefinite degree of opium that we've raised. We've complained about it. We've complained that that's what's going to drive that program. That's what it is. And that they are responsible. The arguments that they have are responsible. They have this trade-off problem of sovereignty versus sovereignty. That's important. Addressability is a standard. Absolutely. I just didn't see a specific standing argument. I know you made one below. I just thought maybe it was a mandate argument. We did. We can't have a mandate argument. It's a jurisdiction question. I don't think we've raised it so responsibly. What we did on appeal, focusing on sovereignty, is we said, we can't get out of the sovereignty problem by presenting a big, indefinite responsibility. And then we became clear in the arguments that were responsible for that. This is really a three-pronged responsibility problem. And that would be enough to dispose of this entire case. Because they have not reached the point. They have not even led a redressable action. They have argued for the problem. Even for what reached the parents here. And their argument is that the state of this country, the basic state of this country is law and sovereignty. It does not extend to claims for declaratory conjunctivism. It has no support for law. Well, going back to your prior argument, what you're basically saying is, the only really practical way that the injury in this case can be redressed is through the legislature to incorporate more government spending. There may be other ways, but my view is that, because all the ways that they want to have problems, they didn't identify any of that protection. But what about the desegregation case, where the Supreme Court has said that, in order to redress historic segregation of schools, it may require the legislature to spend more money. Yes, and I don't know if that gets your audience, but I'm going to start with Axelberg. Because we absolutely can see that it is a necessary effect of an injunction. That the state has to spend more money. That can be a proper application of Axelberg to the court. But I think what it requires here is, the reason that it's not in the Supreme Court, it comes with a report against him in the case, which says that the essence of the relief sought is an order directed to the state treasurer to pay more money. Ex parte, that does not cover that situation. And that is the part that's not in the relief. And of course, in this case, it's from the telephone. The essence of the relief sought is because they haven't asked for anything. Well, don't you think the essence of the relief is they want more money from the state public defender system? That is my view, Your Honor. If it is, then they want more money. That's surely what they want, huh? Absolutely, Your Honor. I've been reading between the lines. They couldn't plead that because if they pled that, it would make the side of the law... Well, counsel, do public defenders still represent people in the post-conviction relief? Okay, and is that part of this case or not? Well, I think it's a very important part of this case. It shows that there's an alternative avenue. It's very adequate. Obviously, six of them have claims to be raised, but I don't think that any of the claims to the petition... Well, that's not constitutionally required to have counsel then. I mean, as far as more than 10 or 15 states, where you get an automatic... An automatic of one of the states called Haiti, you get an automatic voyage. That's part of this case or not? Your Honor, I think it's a very important part of this case. So your answer is yes, it's part of this case? Yes, I agree with that. I just don't think there's... I'm asking a question. I'm not... It's an honest question. I absolutely agree. I couldn't tell by the numbers where there was a violation. Yeah, I totally agree with that. And the point I would make about that is there is a decades-old clearly established avenue for any individual who is convicted of something that seems to have a violation, which is to raise that for a post-dementia disease. It can be raised under Rule 21.55, under Rule 25.19 in the service of a disorderly disease. It can be raised in a federal case. And that is the way that our court system has traditionally addressed the problem that's not been affected by citizens' counsel. I'm not aware of any recent... See, I understand from the complaint, though, that they're not doing many juvenile cases anymore, right? That is another question. That's done by the private bar, right? Yeah, I agree. I think that's another issue with the complaints. And you think that's true to the point? I don't have a case that's been solved now, but I think it's... Go ahead. So, in any event, I want to turn to the Missouri Supreme Court's decision in the Metropolitan Supreme Court against Bill Fulton. It's a decision that they're going to address in their response court. But isn't that a tort case? It does... I mean, it doesn't talk about an injunctive re-reform, does it? That is correct, Your Honor, except to the extent that I agree that it is enunciating clearly and forcibly the principles that govern all claims of sovereignty under the Supreme Court. It is a 2016 decision. It's a judge-student amendment. It's very recent. It's very clear. It says... It uses the phrase that sovereignty is the rule and applies to all suits. It doesn't make any distinction as to what kind of view that is. It doesn't do that in particular. So you rely on the spirit of that case, right? I do not say that, Your Honor. I would say that we rely on the power of that case. Well, the latter of it is about a tort. About 500, 600, all of that. Here's what I mean by the latter of it. Okay, go ahead. It's the following statement, which is correct, Your Honor. In the absence of a specific statutory view or a recognized common law exception, sovereignty is the rule and applies to all suits against a common entity. Since some year... Since some date in 1980. Right. Since some date in 1980. Go ahead. Go ahead. But in fact, I would point out for the Court that one of the principles that's not stated in that case is that political legislature is the only authority that has that full agency, that is, the political advocate sovereignty, in the state of Missouri. And obviously, 5% of that 600 is established by the principle of the law in the specific context of the tort suits and money marriages. But that principle had already been repeatedly recognized by the Missouri Supreme Court in a lot of decisions that there was a peace pact in 1952, and Cleveland, again, of course, from 1952, the Missouri Supreme Court said that the sovereign cannot be sued without its consent. And this rests on grounds of public policy and the law in New York. But legislature is the authority that has... or has the agency that has the authority to change that. Now, that's before the Supreme Court decided to revoke sovereignty. Right? That's right. They were immediately versed by the legislature ever since then. Every single opinion they set on legislature is the one that has to be resolved. So we have a tradition that includes not just 5% of that 600, but cases going back to 1952 and before, let's say in Missouri, you want to navigate the commonwealth through a sovereign committee, it has to go through the legislature. Mr. Schwartz, do you have a lead on why it's not a lead on Wyman? How do you think about that? And Mr. Horton, as well. Wyman is... I agree with you on that. Wyman is not a tort lawyer. Mr. Horton. First of all, the reasoning of Wyman specifically limits the holding of that case to an interpretation of 5% of that 600. So he interpreted the statute. He introduced the entire discussion by saying that Wyman, the sole basis on which the Department of Justice moved for dismissal of the injunction claim in the triad court, was the sovereign committee recognized by 5% of that 600. So Wyman is only discussing a specific statutory interpretation question of whether or not 5% of that 600 addresses claims to the declaratory injunction. He does not report to the OPM and say at commonwealth in Missouri is there sovereign committee in those cases. And if it did, it would be violating two different things. Contradicting very recent opinions of that very same elitist in the western district in 2010 deciding the Kansas City Symphony case and in 2012 deciding the Doyne case and both of those cases hold that sovereign committee applies to claims for equitable, claims for equitable. For example, the Kansas City Symphony case is simply still the same. As the defendant said, we want injunction of that mistake to pay tax revenue into the arts court. And what the court said in that case is well, we have identified a specific statutory interpretation and therefore the Kansas City Symphony has failed to overcome sovereign committee on declaratory injunction. There's a hole from the western district that sovereign committee defines declaratory injunction. Now they found four or five cases, I think there are more, where the Missouri Supreme Court has approved an injunction that is directed to state or state agencies and it's plain an injunction. Enjoying an injunction or using it a few times, several times. What do you do with those four or five cases? They have to see that those cases are not controlled here because the issue is not always addressed. And the court's opinion, oh, and it's the holding and it's the money and it's the putting people back in jobs. It's the real part of the case. Certainly there are injunctions that have been affirmed and I would say those cases have no pressage about it. It's very clear. We've got to be real careful when you look at states and Supreme Courts saying that what they write has precedential value. I want to say that. That's a bridge a long way too far. Go ahead. Certainly, Your Honor, I'm sorry, your title is Mississippi, Florida. Well, a couple of those were mine. Those cases are not precedential. Those cases are not precedential on the specific question that's considered in this case as to whether or not sovereign committee applies a declension of judgment in respect to other things. And I would point out there's a practical reason why it's commonly not raised because in a lot of cases, I think it's a passage on the constitutional basis, there is a problem clearly identifying a proper defendant who may be sued for injunction by a state official under Mexican law. So it isn't surprising that the state doesn't often raise sovereign committee as a judgment in the state if there's also another state official who might be sued in that case and the injunction had exactly the same effect in that case. This case is an unusual case where they really haven't sued the defendants who really are the most common parties which is prosecuting those who say, oh, it's juvenile basis, it's a criminal basis. What about the Supreme Court? The Supreme Court is the one that made these rules about when you get lawyers and when you don't and all this stuff. That's absolutely right. I think that interests you in a lot of the rest of the legal problems that we're facing. There's a lot of agencies that are sued and not sued that have decided something like that. They are, they tiptoe their way into an argument for the problem. But in any event, I think that all the things                   with this. I don't know what I'm doing with this. I don't know what I'm doing with this. I don't know what I'm doing with this. I don't know what I'm doing with this. I don't  what I'm doing with this. I don't know what I'm doing with this. We didn't ask for this case. The principle I would say would apply to state courts as well. This is an inappropriate vehicle to address these problems. In class action, whether brought to state court or federal court, this is a totally inappropriate vehicle to address these problems. Is that the force today? Is that issue about a new class being an inappropriate vehicle? Is that the force of any court? No, Your Honor. We're only in response to questions. Well, how much is it the force at this stage of the game? How much is it the force? Issue classifications. Yeah. Issue what we're not sort of institutionalizing. Whether it's plausible. You know, I think it's kind of a plausible. At what point is there a point plausible, given all the different circumstances in many counties that have 2,000 or 3,000 people, and St. Louis County, Jackson County. So, help me. You're right. I think what I would say, in response to that, is I would raise that point. I would say three enforcers. Three enforcers, so to speak. Class action, whether it's a class action or not, has not been done in any systematic or alleged systematic violations to make the vehicle. They should be litigated on those who mention the vehicle as ever saying the vehicle doesn't exist and it has not been identified. So, that's the only point I was trying to make in response to that particular question. Now, have they alleged any plausible allegations that there have been simple systematic violations in the state of Missouri from time to time, possibly. But, I would say in response to that, that I'm not aware of any particular problem. Most of which, in a few reports, might have been state law, but not in St. Louis, that we have engaged in systematic violations. Well, there are some reported cases. But I'm not aware of that. Go ahead. And, of course, there are state law evidence that we have. You know, section 600, item 6.3 provides a procedure to provide a district amendment. Well, do you think that's what the Missouri Supreme Court is trying to say in its latest three-line decision? You know, the mandamus case. I bet you know what I'm talking about. The order of October 17th. Is this made in the decision? It is. Hazell and Barrett v. Mayor. Decision of the Supreme Court. Three-liner. I don't have anything in the Supreme Court decision. Okay. Go ahead. In any event, I see that my time has expired. I'm just leaving the court with a question. I don't know if the Missouri Supreme Court has decided this issue of sovereign immunity after a judgment made against the state by, on its own decision, the class of case which is supposed to stand between the state itself and our region. In decades of case law, before, and after, the jurors have stated that only the legislature can have its own opinion. And the state, in principle, has not stated it very clearly. In its recent decision, the Metropolitan Surgeon's has stated, in full, that in Missouri, there is sovereign immunity thanks to a judgment made against the state, and also the government has not made that recommendation. Good morning, Your Honors. I'm Patrick Javier from the Planned Parenthood Supreme Court. To paraphrase Harry Sherman, the State Defendant's position amounts to the bug stops of the Missouri Supreme Court. How about the bug stops of the Missouri Supreme Court? So, I'll start with that point of judgment. So, in Pratt, the Missouri Supreme Court actually addressed the question of who bears the obligation to provide for indigent defendants. And the Missouri Supreme Court noted that previously, the Missouri Supreme Court and the Bar had taken the position that they would appoint counsel for indigent defendants, but in the, I believe it was the 70s, the Missouri Supreme Court rejected that and said, no, this is an obligation of the Supreme Court of the United States that is placed on the state itself. It's not the court's burden to execute an obligation that isn't just on the courts, it's on the state as a whole. Now, be very careful where you're going, because, you know, there's a Missouri Supreme Court case that says that every lawyer has to take an appointment from a court, and in criminal cases, a lawyer, even an employer, is not made too bad in some settings. And you know about the October 17 order, do you, in the Van Davis case? Yeah, the three-liner? I think they're trying to say in each case, you're supposed to do that procedure, which was outlined in the 1970s case. Yes, Your Honor. So why is it that the blade should be handled case by case? So there are a few reasons for that, Your Honor. The first is a case-by-case approach, and first, to take a step back, the only issue on appeal for this court, which I know is one of your questions, is whether the state and the governor have sovereign immunity or legislative immunity. We believe whether a class action is appropriate here is not appropriate for this court. That being said, to address your question, as we've explained in our complaint, case-by-case approaches don't work here because the problem is so systemic. So we'll appoint, for example, public defenders over their objection in individual cases, which in this case, we require... Which requires a hearing. You know the statutory procedure. Yes, Your Honor. But even doing that, what the public defenders have said is this requires me to cut the time I have available for my existing clients, placing me in a... Does that include the PCR clients that aren't constitutionally required? The PCR defendants are not part of our class. The class is... Wait, how can they not be if the public defender system is doing the PCR cases? They do, right? They do do that. It's a separate division of the MSPB, but they are not part of the class, they're not part of this case. This case is limited to the Sixth Amendment right to counsel in the trial courts. And to take a step back, also, the redressability, and I agree with Judge Brinder that redressability was not raised by the state defendants in their opinion brief. But to be clear for this court... Mr. Sellers, correct. I believe under this court's precedent, yes, that standing can be raised at any time. And we have standing, and we will legend it sufficiently in our complaint. We're not attempting to hide them all. We'll play cute with the complaint. The complaint follows what the Supreme Court of the United States has instructed in Brown v. Plata as the appropriate approach for injunctive relief from the criminal justice sphere. When an injunction would affect the state's ability to provide various forms of public safety, the Supreme Court has instructed, and Judge Moyes said, wouldn't it be better to have the state come forward with a remedial plan? The Supreme Court has instructed that that is the preferred approach in this kind of litigation. The redressability here, the relief we're seeking, is adequate counsel for the defense. What Brown v. Plata says is it is up to the state to come forward with the best approach to meet that redressable requirement, to provide adequate counsel for the defense. And both sides of the equation that my friend Mr. Sauer pointed to don't raise any concerns. If the state comes forward and says this is adequate funding, which, as Judge Bennett noted, would be one possible remedial solution, is the approach we're going to take here. That doesn't raise a lot of concerns. As this Court has confirmed in cases like Bedell, as the Supreme Court has confirmed in cases like Swan, when the relief saw it imposes funding obligations that is ancillary to an injunction, in this case an injunction saying provide adequate class of counsel,  if a district court orders funding obligations that are ancillary to that injunction and serve the injunction's purpose, in this case it would provide an adequate counsel for the defense. Well, one of the arguments that the state makes is that in the Sixth Amendment arena we have a somewhat unique situation in that you actually have an avenue post-conviction to raise an effective assistance of counsel. You could raise Strickland, you could raise Strickland, in every one of these cases, and I suppose at some point if you bring enough Strickland claims the state may cry out and say okay, we'll try to fix the problem at the front end. But what's wrong with that approach? The Missouri Supreme Court has rejected that approach. Well, counsel, you're wrong about that. The Missouri Supreme Court says once a PCR is filed they get a lawyer. Yes, Your Honor, but the Missouri Supreme Court has rejected that that is the only approach to raising a Sixth Amendment claim. Why is that not a sufficient approach? It is not sufficient because the right to counsel is not merely a right for a person who is innocent to after the fact have their conviction maintained. As multiple courts have recognized, the right to counsel, the guiding hand of counsel, extends at every stage of a criminal proceeding, which is why the Missouri Supreme Court in the Waters case said this is a prospective right that can be forced by a lawyer. Okay, I guess what I just figured out is what if they simply stop the PCR that they and only ten other states do? You know, most states don't do that. Most states say it's case by case. The federal courts are case by case. The Missouri Supreme Court says once they file the PCR, they're given the paper, I think still, when they check into prison to file it. They have a set time to do it. Why doesn't that mean that the logical thing is to take it off back, put it in trial, make you happy? So, Your Honor, this gets to the legal face of the case. There could be multiple remedies that are appropriate for a class like this. That's not for this court to say. And you don't care if they're really bad for the clients. We do care. Are you sure? Are you sure? I'm not sure I understand the question. The question is... Your view is that the PCR is not any part of this case, right? That's correct, Your Honor. The class is limited to the trial, Sixth Amendment, and Missouri Constitutional Rights. Now, they're making multiple remedies for how that right is vindicated, but this is a prospective, conjunctive class that is seeking to vindicate that right. And to turn to the issues before this court, I'd like to turn to immunity. And to clear the table, the other side of the equation that Mr. Sauer pointed to, which would be the junctions that affect how the state actually implements its criminal justice system, he said that would raise Governor Extension issues. Governor Extension was waiting for the state to remove this case from the state court and federal court. We filed this case in state court for a reason. This is not an Eleventh Amendment case. The only question here is whether there is state, Sauer, and immunity for a claim that's a prospective member of the court to enforce the state's own obligations. Wyman is the only Missouri case that directly confronts this issue. It squarely holds Sauer and immunity. It is not our conjunction. As Judge Bennett pointed out, the whole thing in that case was to allow for the conjunction that would require the state to stop re-assigning employees, to allow for re-hiring employees who have been properly dismissed. Wyman is not inconsistent with how the Missouri Supreme Court regularly handles suits against the state. As a matter of state law, it is uncommon to allow for injunctions that are opposed against the state itself, and that is why we believe there is no state, Sauer, or immunity here. Mr. Sauer pointed to two cases where he says they're inconsistent with Wyman. There's the Kansas City Symphony case and the Goynes case. Both of those cases are perfectly consistent with Wyman. What Wyman does, Wyman does have a caveat in that case and we believe the state defendants are insecure in that caveat. The caveat is there's a difference between an equitable relief that is prospective, that is designed to remedy ongoing harms and preventative in the future, and really equitable relief that is retrospective, that is, even though it's all equitable, it's simply remedying past harms. You didn't mention Metro-City District. I did not yet. Okay, yes, go ahead. So I'll go ahead and mention Metro-St. Louis. As Judge Molloy and Judge Bennett pointed out, that is a court damages case that is only interpreting the scope. What about the spirit of those cases? They all have this broad language in what I'm talking about. I'm sorry, cases often do. What about them? They do have broad language, but that broad language only applies in the scope of where sovereign immunity applies. That is a case that actually implicates the state's community interest where a plaintiff seeks damages. Toward damages that, as far back as the common law goes, generally raise sovereign immunity concerns. But as we explained in our brief, it is perfectly appropriate, even in the common law tradition, to seek equitable relief against the sovereign within the sovereign's own courts. That's why it doesn't raise any level of concerns. That's why Blackstone distinguished between suits by foreign sovereigns against the king of England and suits within the king's own equitable courts where subjects have been obtained or even violated their rights. So, yes, the Missouri Supreme Court has used broad language to describe sovereign immunity, but it's only within the context of where that immunity applies. That's a damages case, which the Missouri legislature has now not only made a matter of common law, but a matter of statute by 537-600 at Luke Jones's issue. But isn't that what Wyman is calling out, that statute? No, Your Honor. So Wyman starts with 537-600 and he does discuss it and explains it. 537-600 doesn't apply to statute. The case is heeding injunctive relief. But the language of Wyman goes beyond that. It says, and to quote from 376 at page 2.3, it says that general sovereign immunity principles is the language used for the same principles that apply to both plaintiffs. The sovereign immunity does not necessarily bar a claim for injunctive relief. It's not limiting itself to 537-600. What about page 24, where it says, this decision addresses only general sovereign immunity raised in the state's motion in advance? Yes, Your Honor. Oh, I missed. I said... And we believe that's the worst point. The court is referring to general sovereign immunity. And here's another way we know why the court was going just beyond 537-600. It's stated that it acknowledged 537-600 and no application would be so long. But it left the possibility that sovereign immunity would still apply in that case. And this is the point, again, I was making, which is prospective equitable relief, which does not include injunctive relief. It's retrospective relief, that is, equitable relief dressed up as money gain. We probably need to address the next sentence. It says we do not decide whether any form of equitable relief may implicate sovereign immunity. That's exactly right, Judge Bennett. And so what that is saying is, remember the claims that were issued with Wyman. It was claims where employees have been wrongfully discharged. They're receiving a variety of revenues, such as back pay. And what the Wyman court is referencing there, the principles recognized by the U.S. Supreme Court in cases like Edelman, that you can't seek damages and simply call an inequitable claim that is retrospective equitable relief. And what the court there was saying, this is before us, but what you're trying to get is the damages that you can't get around sovereign immunity. That's why Kansas City Symphony is perfectly consistent with Wyman. Because even though the plaintiffs in that case, the symphony, might call their claims equitable or injunctive, what they were really seeking were retrospective damages. They said we are owed money by the state. The state has not given it to us, and we want it. And the court said that is barred by sovereign immunity. That is what the Wyman court is referencing and saying there could still be sovereign immunity that applies here, notwithstanding that 537-600 is no application in this case. And that's why Wyman goes beyond just 537-600. It's explaining that in any context, there is no sovereign immunity under Missouri law for a claim that seeks only retrospective equitable relief, which is exactly what we're seeing in this case. And we know Wyman is consistent with Missouri law, not only because it's consistent with the Missouri Supreme Court practice of allowing injunctive relief against the state, it's also consistent with the practice of other states, which the Missouri courts have little to no reason to interpret. Was it in all those cases where injunctive relief was really discussed? That's correct, Your Honor. In the Missouri Supreme Court cases, we cite that the issue of sovereign immunity was never discussed. But if sovereign immunity was such an important and sweeping principle in Missouri law that it applied in every possible case, even though it's not discussed, I find it odd that it's not even mentioned in those cases that there was a waiver of sovereign immunity. Don't you think in most of those cases they're just really saying a declaratory judgment? I know they use the term injunction in joint, but if you look at those four or five cases, don't you think that's what they're really saying? I think it's beyond a declaratory judgment. So to give you one example, there was a case that you were on at the time in the Missouri Supreme Court. That was the Brooks v. State case that we cited in our brief. And that was a case actually where the lower court had declined to impose an injunction. It was appealed to the Missouri Supreme Court, and that court reversed and ordered the court to enter an injunction against the enforcement of a concealed carry act that the state legislature had passed. And that was an injunction against the state itself. So we think it goes beyond a declaratory judgment. And again, to reiterate the questions that are before this court in this interlocutory posture, this is only an immediate opinion. The only question that this court can address are whether the state and Governor Brighton's have sovereign immunity or legislative immunity for the suit. And if this court correctly agrees with these, if this court agrees with the district court's correct decision, then Missouri state law does not allow sovereign immunity and the court also need not reach the ex parte young arguments raised by the state defendants. Although Mr. Sauer reckoned that there are various defendants who could probably be sued, ex parte young in the federal document incorporates, acknowledges, although he calls it a fiction, that a suit against a state officer is effectively a suit against the state itself. And so any immunity that Governor Brighton's would have would flow from the immunity of the state. Because there is no immunity of the state, there is no immunity of Governor Brighton's. So to turn to legislative immunity and judgment, there are three reasons why legislative immunity is not appropriate. The first is that the issue is not yet run clear. Because as we were discussing with respect to the remedy, there are multiple ways that the state consistently grounded a lot of the proposed remedy here. Legislative immunity only applies to one narrow aspect of the potential remedy. That is the governor's power to regulate the funding of the state. And until the district court imposes an order that actually restricts that authority, this issue is not running in the court. But even if the court decides to address it, legislative immunity does not apply to realistic remedies. So there are a few... we think there are a few remedies. One would be funding obligations for the state. One would be hiring more public defenders. There could be reports that advise how the state is meeting its obligation for management structure oversight. That's something that the federal court... Cutting off PCR counseling is not constitutionally required. In addition, there could be an injunction that does actually limit the governor's ability to withhold funding from the MSP after it's been allocated by the state. That could be part of... So far, it sounds like everything you've told me is fine. So the... and the other side of the equation would also be to reduce the number of cases brought again. Does the governor inform the governor of Missouri that the future prosecutorial authority is on this case? So the local prosecuting authorities do have the power to decide which cases are brought. But the governor is also connected to the criminal justice system. The Missouri Revised Statute 27.3.0. It's a statute this court has relied on before in cases like reproductive health services and 281. Does the governor have authority over the prosecutorial authority to not bring cases? So the governor doesn't have the authority directly over lots of local prosecutors. What he has the authority to do is to direct the attorney general or his assistants to intervene in local... I think it says assist, doesn't it? It does say assist. It doesn't say intervene, does it, counsel? I believe it's been used in practice as a sort of a special counsel position where an attorney... Correct. Yeah, so it does not say intervene in that. It says assist. That's correct. And how is that a means to bring people to cases? So, again, we're not at the remedial phase. It would depend on how the state would propose, but what... But if you can't get around funding, then I'm back to the legislative committee. So we think we can get around funding for the reasons we've discussed, that it is perfectly appropriate, as Judge Boyd pointed out, in the desegregation cases where you have a prospective remedy that is designed to remedy ongoing violations. It does not violate immunity to impose funding obligations in order to meet that obligation. And one example of that is the Liddell case from this court, which said funding obligations in service of a prospective injunction, but even if this court reaches the legislative committee in question, we believe there is no legislative committee. First, this is not a personal capacity suit. We have sued the governor in his official capacity, and as this court explained in the Roach decision, legislative committee has no application in an official capacity suit. So it's simply inapplicable in an action like this that sues the public official in his official capacity. And even beyond that, even if this court were to reach legislative and committee government merits, this isn't a legislative act. A legislative act ended when the budget was appropriated in the first instance. The governor... Well, that's a cramped reading of the Missouri Constitutional Committee Council. I don't believe so, Judge Boyd. The Missouri Supreme Court has always let the... There have been many suits about this in many interest groups over the years. I think the Missouri Supreme Court in Missouri cases let the governor have pretty broad discretion on changing the appropriation The governor absolutely has discretion to withhold monies. We're not contesting that he lacks the general power to do so. The only question is whether that power is legislative or executive. It's still part of the legislative process, right? It is not. Because it's the appropriation, but it's not the appropriations. Well, the appropriations process is complete when the budget is enacted. Well, that's the cramped version, right? I don't believe it's cramped. I believe it's... To give an example, Judge Benton, the governor always... So the appropriations authorizes the spending of money. Then the question is whether the money is actually disbursed. That's where the governor's withholding power comes in. He never needs to use it. And that's where we get to the vogons for emphasis on formality. Is this an integral part of the legislative process? The governor signing the bill is, or rejoining the bill is, because it can't go into effect without the governor's act. But the withholding power happens down the line after the fact, at the governor's veto. Counsel, there are some big appropriations that are passed over the governor's veto. That's correct. And that is part of the process. So the only time he gets to play is on the withholding. Get it? I absolutely get it. That's why it's still part of the process. Well, I believe, Your Honor, the governor has the power to line out a veto in the legislative process. And that could be overwritten. See what we're saying? This is a back and forth. I do, Your Honor.  Go ahead. And just to close, we believe legislative immunity is not an appropriate issue for this court's consideration because of the rank decision, because of the conditional capacity issue. And with that out of the picture, all that's left for this court to decide is sovereign immunity for the reasons we've stated. We do not believe sovereign immunity applies here. We ask that you refer the order to Mr. Summers. Thank you, Mr. Chairman. Mr. Summers, if I can just, you've addressed the conditional capacity question. You suggested that you can't bring this case, or that you have any legislative defense, since they applied this sort of as an immunity request. Your Honor, that's, I think he's right. He's supposed to have a first decision in this court for the 2007 plan. We think the first decision is going to draw from two reasons. First of all, the first decision addresses a unique situation where there was a facial challenge to a constitutional, or to a state statute that, by the license of that context, allowed a set of commissioners to exercise their discretion, one kind of discretion, and engage in a form of discrimination where it didn't refine these kind of applications that were put in, but it's essential to that. And so in that context, what the court had concluded, and this was basically a constitutional, is that it did not matter, you know, who won the statute, whether it was a human being or a human being, to exercise their discretion. And in particular, the legislative immunity, they proposed in that case as, they said, only state legislators are going to be able to impose this kind of immunity. They're going to apply a legislative immunity because of the statute. What they've done with the statute is patiently amend it because of the unique application of the legislative immunity. And our position is that that approach should not be extended in this particular context, which is very different. We pointed out that the approach was the side of the Almonte decision of the Second Circuit to reduce the inclusion of interpersonal events. Later that year, in the Romland case, the Second Circuit pointed out that we are not going to extend that in the context of municipal officials, because this is a very important agenda against consumers who, in this case, is controlled and does go to bat. Legislative immunity may be restricted by state officials. So this court should not extend merchants in a particular context. It should follow the sort of rule of law that was very important in that consumer's view of the United States. I just want to address Mr. Schottman's response to your question. He said, what records could be used for subpoenaing and identifying fraud? He said, impose a money combination, hire more public defenders, and injunction, stop the government from holding things. All of those can be planned and prepared for relief, but it could legally end up being, in this case, a bar on my side. Those are all requests for injunction to directly misdemeanor treasurer. But you could have a remedy that doesn't require money. It's very unfavorable, which basically, either don't bring cases or put them all down to misdemeanors where counsel is not required. Let's say you had a case where you have 10,000 prisoners in a prison built for 1,000 people, and the federal court issues an injunction on overcrowding. Now, you've got two choices. You can build more prisons, which means more money, or you can release the prisoners. Now, releasing prisoners may not be valid, but it is a solution. It's not bringing cases or putting them down is a solution. I would say two things in response to that. First, that these defendants, the defendants who are actually named, do not have the authority. The governor could not go to the courts and either cause the local prosecutors to deliver the story of all of my children or all of my relatives. The governor has no control over them. He cannot control the charges against the local prosecutors. And the compliance with 279-1 does not, in any way, make the governor a problem. If the governor had the authority, all he would do is turn to the attorney general to get involved in the system of prosecution that's brought about by the federal prosecutors. The governor has no authority to do so. He has no control over the filing of cases at that time. So they haven't been suing the property defendants in the way they asked for that authority. And if they did ask for that authority, regardless of whether that authority was asked for by the state or the federal court, it would be extremely problematic for a court to join prosecutors not to bring federal cases. And the problems with that are so paramount that it's obvious they don't want to defend the limitation. There really is no property to be included that wouldn't have raised a huge constitutional problem. That's why they haven't asked for it. And for all those reasons, it's not going to be able to solve the case that the attorney general is asking for. Thank you. Thank you for your appearance here today. In your arguments, the case has been very well framed. We'll take it into submission. The court has to figure it out.